Respondent moves to dismiss the first appeal on the ground that Milton Louis Roberts was an adverse party and should have been served with the notice of appeal, notwithstanding the fact that he had not appeared and taken any part in the proceedings from which the judgment appealed from was entered. The petition filed by respondent to terminate the trusts was one in probate filed under the authority of section 10352, Revised Codes *Page 242 
of 1921. Proceedings under this section, like all other proceedings in probate, are proceedings in rem and not inpersonam. (Security-First National Bank v. Superior Court,1 Cal.2d 749, 37 P.2d 69.) The present proceeding not being one in personam, but one in rem, the only parties to it were the persons who actually appeared therein, namely, respondent Roberts, appellants and the Great Falls National Bank. This was clearly held in the case of Estate of McDougald, 143 Cal. 476,77 P. 443.
The rule there enunciated was reiterated in the case ofEstate of Carpenter, 146 Cal. 661, 80 P. 1072. At the time the cases above were decided, the California statutes relating to appeals were the same as the statutes of Montana as they exist to-day. The doctrine announced in these cases was approved by this court in the case of In re McGovern's Estate, 77 Mont. 182,250 P. 812, where this court said:
"This question has never before been presented to this court, but, under like statutes and a like situation, the supreme court of California has repeatedly held: `That such others having allowed the other interested persons to conduct the proceedings for their benefit, they must be considered as having consented that they should be represented by these other persons in any appeal that may be taken from the order thus procured.'" So in the present case, Milton Louis Roberts having allowed another interested party to conduct the proceeding for his benefit, he must be considered as having consented that he should be represented by such other party in any appeal that might be taken.
The authorities cited by counsel for respondent are not in point. With the exception of In re McGovern's Estate, supra, and In re Toomey's Estate, 96 Mont. 489, 31 P.2d 729, which counsel seek to distinguish, none of the authorities cited involved proceedings in probate or other proceedings in rem.
All of them (with the two exceptions mentioned) pertained to ordinary civil actions between one or more plaintiffs and one or more defendants. In the case of such actions the parties are the *Page 243 
plaintiff or plaintiffs and such of the defendants as are served with process. Such, however, is not the case here.
The present proceeding involves property valued at a figure in excess of $400,000. The appeal is by no means frivolous. On the contrary, the judgment appealed from contravenes not only the express provisions of section 10328, Revised Codes 1921, but also a long line of decisions holding that once a decree of distribution has become final it is a conclusive adjudication of the validity of any trust subject to which property is distributed thereunder. (Town of Cascade v. Cascade County,75 Mont. 304, 243 P. 806, 808; Keating v. Smith, 154 Cal. 186,97 P. 300; Manning v. Bank of California, 216 Cal. 629,15 P.2d 746, 748; Crew v. Pratt, 119 Cal. 131,51 P. 44.)
It is respectfully submitted that appellants should not be deprived of their right to an appeal, and, consequently, of a valuable property right, by reason of having followed a practice approved by this court in In re McGovern's Estate, supra.
Quite apart from the foregoing considerations, the motion to dismiss must be denied. It is elementary that a person named in a complaint as a defendant, who is not properly served with process and who does not appear, is not a party to the action and no notice of appeal need be served upon him. "Those persons, firms and corporations named in the complaint as defendants, but on whom no service was obtained, were not, in fact, parties to the action, and therefore could not be adverse parties to the appeal. Parties to an action are those who are named as such in the record and who are properly served with process or who enter their appearance in the action." (Mitchell v. Banking Corp.,81 Mont. 459, 264 P. 127; Hooven etc. Co. v. JohnFetherstone's Sons, 111 Fed. 81, 49 C.C.A. 229.) It is admitted that Milton Louis Roberts never appeared in the proceeding and the record discloses that he was not properly served with process of any nature.
The lower court made an order that the citation herein be served on Milton Louis Roberts and John Stotter, nonresidents of the state of Montana, by publication. The citation, however, *Page 244 
was never published, but in lieu thereof the petitioner Elmore William Roberts purported to make personal service of the citation on Milton Louis Roberts in California. It is submitted that the purported service was wholly ineffective. Personal service of process beyond the territorial jurisdiction of a state is valid only when expressly authorized by statute (50 C.J. 543), and section 10352, supra, which contains complete provisions in reference to the manner in which citations in proceedings instituted thereunder shall be served, does not authorize the personal service of such citations outside the state. On the contrary it expressly provides that as to beneficiaries in the state the citation shall be personally served in the same manner as summons in a civil action, but as to beneficiaries outside the state, the citation shall be served by publication. It is quite true that section 9118 provides that where service of summons by publication has been ordered, personal service outside the state shall be the equivalent of publication. But this section is applicable only to the service of summons and section 10352 incorporates the provisions of the Code in reference to the service of summons only in respect to the service of beneficiaries within the state.
Furthermore, even if section 9118 were applicable, the purported service of Milton Louis Roberts would still be invalid for the reason that there was no valid order of publication. Section 10352 provides that the citation shall be published for not less than two months, whereas, in the present case the court ordered that the citation be served for four successive weeks. Parenthetically, it may be noted that less than two months elapsed between the date on which the petition was filed and the date on which it was heard. It is submitted, therefore, that the order for publication was void; that the order being void no valid service was ever made on Milton Louis Roberts, for it is elementary that in order to make personal service out of the state the equivalent of publication and deposit in the postoffice it is essential that there be a valid order of publication. (Rome Trust Co. v. Cummings, 123 Misc. 884,206 N.Y. Supp. 728, 731.) *Page 245 
There are two reasons why the motion to dismiss the second appeal must be denied. In the first place, it has been decided by this court that the perfection of two appeals from the same order or judgment is not a ground for dismissing either appeal, but, on the contrary, the two appeals will be treated as one. In this connection see In re Davis' Estate, 11 Mont. 1, 27 P. 342, where this court said: "If we regard as irregular the taking of two appeals when one is sufficient, that fact does not in this instance deprive the contestants (i.e., respondents herein) of any substantial right."
In the second place, the ground urged for dismissing the first appeal was that Milton Louis Roberts was an adverse party. In the second appeal Roberts has been served with notice of appeal. If he was an adverse party, then the failure of appellants to serve him with a notice of appeal in the first appeal would deprive this court of jurisdiction to hear and determine the appeal. SeeMitchell v. Banking Corp., 81 Mont. 459, 471, 264 P. 127, where this court said: "As this latter class of defendants were not served with notice of appeal, this court is without jurisdiction to review the action of the trial court sustaining the demurrers and in entering the judgment from which plaintiffs have attempted to appeal." If such is the case, then the pendency of the former appeal would not be a ground for dismissing the second appeal. (See in this connection 3 Corpus Juris, 352.) In view of the foregoing authorities, we believe that it must be conceded that the motion of respondent to dismiss the second appeal must be taken as an admission that the first appeal was properly taken.
Elmore William Roberts moves to dismiss the appeal herein upon the ground that this court is without jurisdiction in that *Page 246 
no notice of appeal was ever served upon Milton Louis Roberts, who is an adverse party.
An "adverse party," within the meaning of section 9733, Revised Codes 1921, is a party to a judgment whose rights may be injuriously affected by its reversal or modification, or one who has an interest in opposing the object sought to be accomplished by the appeal. (Mitchell v. Banking Corp., supra; T.C. Power Bro. v. Murphy, 26 Mont. 387, 68 P. 411; Spokane R. W.Co. v. Beatty, 37 Mont. 342, 96 P. 727.)
That Milton Louis Roberts is "an adverse party" under the above definition seems too clear for argument. The proceeding was prosecuted as much for his benefit as for petitioner's. By reason of the proceeding the trusts have been terminated and he is now the owner in fee simple of an undivided one-half interest in property having a value in excess of $500,000. He has accepted the conveyance to him. Should the order of the district court be reversed he would be compelled to reconvey his interest to a trust and to accept in lieu thereof a portion of the income derived therefrom. While he did not appear in the action he has been at all times a party, and one whose interests are adverse to John Stotter and Maria Frances Gray. (See, also, Johnson v.Phenix Ins. Co., 146 Cal. 571, 80 P. 719; Merk v. BoweryIns. Co., 31 Mont. 298, 78 P. 519; Spokane R. W. Co. v.Beatty, supra; Cummings v. Reins Copper Co., 40 Mont. 599,107 P. 904; Anderson v. Red Metal Min. Co., 36 Mont. 312,93 P. 44; Great Falls Nat. Bank v. Young, 67 Mont. 328,215 P. 651.) The situation here presented is the reverse of that presented in In re McGovern's Estate, 77 Mont. 182,250 P. 812; In re Toomey's Estate, 96 Mont. 489, 31 P.2d 729, for in each of such cases the appellant was representing the interest of those not served with notice. A similar situation would be here presented if Elmore William Roberts was the appellant. *Page 247 
In a proceeding to terminate a trust all beneficiaries must be made parties (Tilton v. Davidson, 98 Me. 55, 56 A. 215), and where judgment is rendered in favor of beneficiaries in a trust estate that is the subject of litigation, such beneficiaries are necessary parties to the appeal, and a failure to serve these defeats the jurisdiction of the appellate court. (National Bank of St. Mary's v. Gille Hdw. Iron Co.,58 Kan. 815, 49 P. 159.) The distinction between the situation here presented and the two California cases cited by appellants is obvious. Herein, by order of court, Milton Louis Roberts, as one of the two beneficiaries of the trust, and as one of the sole heirs of the decedent was made a party to the proceedings. He is not a mere creditor or legatee. Neither the appellants here nor the respondent Elmore William Roberts acted for him in the district court. Certainly his rights on this appeal will not be protected by the appellants herein who are admittedly adverse to him. In all the cases relied upon by appellants in their brief the rights of those not served with notice of appeal were protected by the appeal. They could lose nothing by a reversal. Herein the situation is exactly opposite, and under the authority of the cases above cited the appeal herein must be dismissed. Whether the proceeding is one in rem or in personam is beyond the question here discussed. An action to quiet title or to foreclose a mortgage is in rem, but the same rules with respect to service of notice of appeal apply.
A suggestion is made in appellants' rebuttal brief that the proceeding brought by Elmore William Roberts in the lower court is not a proper proceeding, and that the proper proceeding should be an action brought for the purpose of terminating the trust. Appellants are hardly in a position to raise this question for the reason that they voluntarily appeared therein by answer and sought for themselves affirmative relief. However, if this proceeding be considered as an action, then without question the service made upon Milton Louis Roberts was sufficient and the theory advanced by counsel need be given no further consideration. *Page 248 
Appeals from the district court of Cascade county. Julia Roberts died testate on the 8th day of October, 1930. At the time of her death she was a resident of California, but left property, both real and personal, in California and Montana. She was survived by two sons, Milton Louis Roberts and Elmore William Roberts, and by one brother, John Stotter, a resident of California. Her will was duly probated in the district court on November 19, 1930. It recited that decedent was a widow at the time of the execution thereof, January 4, 1930, and that her only living children were Elmore William Roberts, aged 37, and Milton Louis Roberts, aged 34.
The estate proceeded through administration and on December 2, 1931, a decree of distribution was entered. By the terms of this decree, and in accordance with the provisions of the will, distribution of certain small bequests was made to outside parties, and all of the residue of the estate, both real and personal, was distributed to the Great Falls National Bank, a corporation, as trustee. The will provided that all of such residue was given, devised and bequeathed to the Bank of Italy National Trust Savings Association, a national banking association, to be held in trust for the uses therein expressed. The Bank of Italy renounced its right to be appointed as trustee; in its stead the Great Falls National Bank, Great Falls, Montana, was appointed and all of the property distributed to it. A decree of final discharge of the administrators or executors of the will was duly entered on December 9, 1931.
The important paragraphs of the will read as follows:
"Sixth. All of the rest, residue and remainder of my estate, whether the same be real, personal or mixed, of whatever kind or character and wheresoever the same may be situated, of which I may die seized or possessed, or in which I may have any interest or right of testamentary disposition or power of appointment at the time of my death, I hereby give, devise and bequeath to Bank of Italy National Trust Savings Association, *Page 249 
a national banking association, to be held in trust, nevertheless, subject to the following uses, terms, conditions and limitations:
"(e) The entire net income received and derived from the trust estate shall go and be paid monthly or quarterly, as follows: Each of my said sons shall receive therefrom the sum of six hundred ($600.00) dollars per month for the term of five (5) years from and after the date of distribution to said trustee and the remainder of said net income is to be added to the principal of the trust estate; after the end of the said five (5) year period, the entire net income shall be divided equally between my said sons, until the death of the last one surviving and should the one dying first leave issue of his body surviving, then said issue shall receive the income to which his father would have been entitled until the termination of this trust, but should the one dying first leave no issue, then the entire net income shall go to the survivor until his death.
"(f) This trust shall cease and terminate upon the death of the last survivor of my said sons, whereupon my said trustee shall pay, deliver and convey all of the trust estate then remaining in his hands to the surviving bodily issue of my said sons, per capita, if any, and if there is no such surviving issue then the entire trust estate shall be distributed to my heirs in accordance with the laws of succession of the state of California then in force.
"I have purposely made no provision for any other person, whether claiming to be an heir of mine or not, and if any person, whether a beneficiary under this will or not, mentioned herein, shall contest this will or object to any of the provisions hereof, I give to such person so contesting or objecting the sum of one dollar ($1.00), and no more, in lieu of the provisions which I have made or which I might have made for such person so contesting or objecting."
A copy of the will was attached to and made a part of the decree of distribution, and thereafter the Great Falls bank proceeded to administer the trust. *Page 250 
On January 25, 1935, Elmore William Roberts, one of the sons, filed a petition in the district court of Cascade county, under the provisions of section 10352, Revised Codes 1921. The petition recited the execution of the will, the probate thereof, the administration of the estate, and all of the things preceding the filing of the petition itself. It set forth the provisions of the will already recited herein, and alleged that such provisions were invalid and of no force and effect because they were in conflict with certain enumerated statutes of Montana.
In conformity with the prayer of the petition, a citation was issued requiring all persons interested in the matter to appear and show cause on the 13th day of March, 1935. The citation was delivered to the sheriff of Cascade county for service, and service was made upon the bank. The sheriff's return recited that it was impossible to make service in Montana upon Milton Louis Roberts and John Stotter. Application for an order for publication was made by affidavit of counsel. The court made an order that Milton Louis Roberts and John Stotter be served by publication. Alias citation issued on January 26, 1935. In lieu of publication, personal service was made upon Milton Louis Roberts and John Stotter, both in California. The service on Milton Louis Roberts was made by a deputy sheriff on February 4, 1935, and return thereof was made under oath. Milton Louis Roberts never appeared in the proceedings, but Maria Frances Gray, formerly Maria Frances Stotter, and John Stotter appeared by answer filed March 13, 1935, the day set for hearing the petition.
The answer admitted the essential facts of the execution of the will by Julia Roberts and of the administration and distribution of her estate in accordance with the will. It denied the illegality of the trust provisions of the will, and alleged that at the time of the death of decedent there were living her two sons and a brother, one John Stotter; that said John Stotter had died since the death of his sister, the testatrix, and that the answering parties were his surviving children and only heirs at law; that as such successors and heirs at law of John *Page 251 
Stotter, deceased, the answering parties were the legatees entitled to take all that portion of the estate designated to go to the heirs of Julia Roberts upon the demise of her sons without issue. The answer further recited the provision of the will relative to penalty and forfeiture to be enforced against anyone who sought to break the will, or who objected to any of the provisions thereof. It also recited that the sons from the date of the entry of the decree of final distribution until that time had received the income as provided by the will; and finally prayed that the petition of Elmore William Roberts be denied and the decree of distribution be adjudged to be final, and that Elmore William Roberts be denied further participation in the estate by reason of the recited provisions.
The bank filed an answer, admitting and denying allegations of the petition, and finally praying that the relief be denied and the decree of distribution be allowed to stand.
On March 13, 1935, the date designated in the citation, the matter came on for hearing upon the petition and upon the answer of Maria Frances Gray and John Stotter. At that time no reply had been filed by petitioner. The matter was taken under advisement by the court, and each side was instructed to file briefs. Two days later, on March 15, 1935, petitioner served and filed a reply; it denied, upon information and belief, that Maria Frances Gray and John Stotter were the surviving heirs of their father, John Stotter.
On May 10, 1935, appellants Gray and Stotter made application to the court for authority to take depositions to establish the relationship and heirship of Gray and Stotter. The application for authority to take the depositions was resisted on the ground that no application was made to open the case for further testimony, and that the case had been closed. The judge denied the application to take depositions.
On July 8, 1935, the court made and caused to be entered what was denominated an "Order and decree." From the recitations of this decree it is evident that the court considered that the whole matter had been submitted at the time of the *Page 252 
hearing, and that the issues had been settled and made up at that time, and that the reply thereafter filed was of no force and effect in the premises. This, in fact, was the basis for the refusal of the court to open the matter for further testimony by way of deposition.
The decree recited at great length all of the facts with relation to the estate, and repeated the provisions of the will with relation to the trust. It found that the trust provisions of the will were illegal and terminated the trust; ordered the discharge of the bank as trustee; declared that Elmore William Roberts and Milton Louis Roberts were the owners in fee simple of the property held by the trustee, and recited "that the title of the said Elmore William Roberts and Milton Louis Roberts in and to the property herein described and the whole thereof be and the same is hereby quieted against all persons claiming or to claim an interest therein under the terms of said will, decree or otherwise." It was further decreed that the Great Falls National Bank, as trustee, and Gray and Stotter be forever enjoined and restrained from claiming any right, title or interest in and to the property adverse to the right, title and interest of Elmore William Roberts and Milton Louis Roberts.
Thereafter Gray and Stotter proceeded to appeal from the judgment, but did not attempt to make any service upon Milton Louis Roberts. It will be remembered that Milton Louis Roberts had not appeared in the proceedings at any time, although he had been served with the alias citation containing the notice of the hearing on the petition. The question as to the sufficiency of the appeal without service upon Milton Louis Roberts was raised by motion to dismiss the same.
On December 27, 1935, there was filed and served a second notice of appeal identical in wording to the notice of appeal theretofore filed. A second undertaking on appeal was also filed.
Two attempted appeals are before us. The only difference in them is that in the first one Milton Louis Roberts was not *Page 253 
served, whereas on the second appeal service was made upon him.
Motion to dismiss first appeal: Respondent filed a separate motion to dismiss the appeal first taken. Hearing upon that motion was postponed until the argument upon the merits. In disposing of the motion, we must keep in mind that the proceeding instituted in the district court was under the provisions of Chapter 55, Part IV of the Code of Civil Procedure, section 10352 et seq., of the Probate Practice Act. Section 10352 provides: "Where any trust has been created by or under any will to continue after distribution, the district court shall not lose jurisdiction of the estate by final distribution, but shall retain jurisdiction thereof for the purpose of the settlement of accounts under the trust." The section then provides that any trustee created by a will or appointed to execute any trust, may from time to time, pending the execution of the trust, or at the termination thereof, render and pray for the settlement of his account as such trustee before the district court in which the will was probated, and in the manner provided for the settlement of the accounts of executors and administrators. It further provides that upon the filing of a petition in the matter, the court or judge shall fix a day for the hearing, and issue a citation citing all the beneficiaries of the trust to appear and show cause, etc.; that the citation shall be personally served upon all the beneficiaries in the state in the manner provided for the service of summons in civil actions; and that the citation shall be served upon all the beneficiaries who shall appear by affidavit to be absent from the state, by publication, in such manner as the court or judge may order, for not less than two months.
It will be observed that the petitioner here proceeded in accordance with the practice in civil actions, and to that end made service on the nonresident beneficiaries by substituted service as required by the Code of Civil Procedure involving civil actions. The alias citation was issued on January 26, 1935, and *Page 254 
was served upon Milton Louis Roberts by a deputy sheriff in California on February 4, 1935.
The hearing on the petition was fixed for, and occurred on, March 13, 1935. The service on John Stotter was made in California on February 9, 1935. The John Stotter who was a brother of decedent, was dead at the time, and his son and daughter filed their answers on the day of the hearing. No[1] question has been raised as to service on the Stotter heirs; if there was any irregularity, it was cured by their appearance. But Milton Louis Roberts did not appear; however, no default was ever entered as to him. Nothing appears in the record to show that any question was raised about his failure to appear or about the regularity of service upon him. The hearing proceeded without him, although it is evident that he was not given the full 60-day notice mentioned in section 10352, supra. In fact, no question was raised as to this matter until the appeal was taken to this court by the Stotter heirs, and until after respondent had filed his motion to dismiss the appeal. The motion to dismiss this appeal was based solely upon the failure to serve the notice of appeal upon Milton Louis Roberts, one of the brothers and one of the beneficiaries under the trust created by his mother's will.
Before proceeding to a discussion of the motion proper, which involves the question of whether Milton Louis Roberts was an adverse party upon whom service of notice of appeal was required, we pause to consider the objection made by appellants as to the original service made upon Milton Louis Roberts. Appellants claim that he was never a party to the proceeding, "much less an adverse party," for two reasons: (1) That he was not properly served with process; and (2) that in proceedings under the sections of the Code involved, no person can be regarded as a party who does not appear and take part in the proceeding. We believe there is no merit in this contention. While the statute does require that notice be given to all of the beneficiaries of the trust in the first instance, the record does show that a service was made upon Milton Louis Roberts *Page 255 
in California. It is true that it does not show that 60 days' notice was given.
We do not believe that appellants are now in a position to complain as to the service made on Milton Louis Roberts. A party[2] cannot avail himself of defects in the service of summons on other parties. (Adams v. Hopkins, 144 Cal. 19, 77 P. 712;Nichols v. Nichols, 135 Cal.App. 488, 27 P.2d 414; SalzerLumber Co. v. Lindenmeier, 54 Colo. 491, 131 P. 442; Callender
v. Crossfield Oil Syndicate, 84 Mont. 263, 275 P. 273; 2 Cal. Jur. 843, sec. 494; 1 Kerr's Pleading Practice in the Western[3] States, 277, sec. 220.) Certainly, the appellants here are not in a position to urge that Milton Louis Roberts was not a necessary party to the original proceeding. They now urge that he is not a necessary party to the appeal, because he was not properly served in the beginning, and that therefore he was not a party at all. We see no force in this argument. We are of the opinion that Milton Louis Roberts was a necessary party at all stages of the proceeding. We hold, however, that the appellants here are not now in a position to attack the service made upon him in the beginning.
As to the necessity for the service of the notice of appeal to this court upon Milton Louis Roberts, we are impressed by the fact that timely objection was made to the consideration of the appeal upon its merits because of the failure to serve him with the notice thereof. The controlling statute under which the appeal to this court was taken is section 9733, Revised Codes 1921, which reads as follows: "An appeal is taken by filing with the clerk of the court in which the judgment or order appealed from is entered, a notice stating the appeal from the same, or some specific part thereof, and serving a similar notice on the adverse party, or his attorney."
This court has frequently endeavored to define an "adverse[4, 5] party." In the early case of T.C. Power Bro. v.Murphy, 26 Mont. 387, 68 P. 411, 412, the matter was given careful consideration. There it was said that "a party is adverse who has an interest in opposing the object sought to be *Page 256 
accomplished by the appeal." The court then quoted with approval language from the case of Thompson v. Ellsworth, 1 Barb. Ch. (N.Y.) 624, as follows: "By adverse party is meant `the party whose interest in relation to the subject of the appeal is in conflict with the reversal of the order or decree appealed from,' or the modification sought for by the appeal." The court elaborated at great length upon the subject, and, in deciding whether a party in that action was an adverse party, said: "A party to a judgment whose rights may be injuriously affected by its reversal or modification is entitled to notice of appeal. The fact that he failed to answer the complaint does not deprive him of such right." It further said: "Not having appealed, he is presumed to be satisfied with the judgment which established such lien, and to object to a reversal of it or to a change in its terms."
In the case of Anderson v. Red Metal Min. Co., 36 Mont. 312,93 P. 44, 47, the court repeated that "an adverse party, within the meaning of this statute, is one `who has an interest in opposing the object sought to be accomplished by the appeal.'" In the case of In re Murphy's Estate, 57 Mont. 273,188 P. 146, 148, this court said: "A person interested, within the meaning of the statute allowing an appeal from a decree of the probate court, is one who has some legal right, or is under some legal liability, that may be enlarged or diminished by the decree. * * * This refers to a pecuniary interest which might be established, in whole or in part, by the decree." (See, also,Mitchell v. Banking Corp., 81 Mont. 459, 264 P. 127; In reBaxter's Estate, 94 Mont. 257, 22 P.2d 182; In re Toomey'sEstate, 96 Mont. 489, 31 P.2d 729; Spokane Ranch WaterCo. v. Beatty, 37 Mont. 342, 96 P. 727, 97 P. 838.)
It is certain that Milton Louis Roberts is an interested party and that he stands to have something taken away from him by the[6] appeal. Not only that, but the jurisdiction of this court to hear the appeal is involved. In 2 Haynes on New Trial 
Appeal, page 1128, section 210, there appears a discussion *Page 257 
of the subject, and with reference to the notice of appeal, it is said: "Inasmuch as the objection under consideration goes to the jurisdiction of the appellate court to hear and determine the appeal, any respondent is within his right in raising it, whether he is injured or not by the failure of the appellant to serve necessary parties with the notice of appeal."
In this case the order of the district court directed the delivery of possession of all of the trust property to the two brothers, including Milton Louis Roberts. If the order, or decree, as it is termed, is reversed, Milton Louis Roberts will be required to deliver the property so received by him to some appropriately designated trustee. In our opinion, he is an adverse party within the purview of the appellate statute, and the failure to serve the notice of appeal on him was fatal to the appeal. The motion to dismiss the first appeal must be, and is hereby, sustained.
The second appeal: Under date of November 12, 1935, a second[7] notice of appeal was given. This notice was served upon the attorneys for Elmore William Roberts in Great Falls, Montana, on the 27th day of December, 1935, and upon Milton Louis Roberts on November 14, 1935. A motion to dismiss this appeal was filed, on the ground that the appeal was not taken within time.
Appellants argue that under the provisions of section 10352, supra, the only jurisdiction left in the district court after decree of distribution has to do with the distribution, accounting and settlement of the trust, and that the jurisdiction is limited to such matters. In effect, they argue that the proceeding, being an action to terminate and determine the trust, was an equitable action. In support of their theory, they cite and rely upon the case of Philbrick v. American Bank TrustCo., 58 Mont. 376, 193 P. 59, and McAdoo v. Sayre,145 Cal. 344, 78 P. 874. They assert that the order, or judgment, entered by the court was a final judgment from which the appeal could be taken within six months. They also cite and rely upon the case of Parkman v. Superior Court of Los Angeles County,77 Cal.App. 321, *Page 258 246 P. 334, 335, where the court said: "The real business of the probate court is the settlement of estates of deceased persons. When the order of final distribution and discharge of the executor under the will or the administrator of the estate has been entered, the work of the probate court with reference to the estate is ordinarily ended," etc. They also rely upon the case of In re Phillips' Estate, 86 Utah, 358, 44 P.2d 699, wherein it was held that even though the petition was addressed to the probate division of the court, such a proceeding must be considered as a separate proceeding, and a judgment entered therein a final judgment. From that they argue that the second appeal was timely because taken within six months.
The reasoning of the cited cases is sound, and was approved by this court in Re Harper's Estate, 98 Mont. 356,40 P.2d 51, 54, where it was said: "The district court, when proceeding under the provisions of section 10352, has the same general jurisdiction and powers as are exercised by a court of equity over trusts," citing Philbrick v. American Bank Trust Co.,58 Mont. 376, 193 P. 59; In re Estate of Hubbell, 121 Cal.App. 38,8 P.2d 530; Parkman v. Superior Court of LosAngeles County, supra; 11B Cal. Jur. 838.
The asserted contention might be conclusive but for the fact that we have a statute so broad that it includes such a judgment even though the same may be final in its effect. Chapter 56 of Part IV of the Code of Civil Procedure, a part of the Probate Practice Act, sections 10355 to 10376, inclusive, Revised Codes of 1921, contains the following sections:
"10366. New trials and appeals. The provisions of sections 9008 to 9832 of this code, relative to new trials and appeals — except in so far as they are inconsistent with the provisions of sections 10018 to 10464 — apply to the proceedings mentioned in the sections last enumerated.
"10367. Within what time appeal must be taken. The appeal must be taken within sixty days after the order or judgment is entered." *Page 259 
It then becomes obvious that it makes no difference whether the so-called "order and decree" was merely an order or actually a judgment or decree. In any event, the time for appeal is controlled by section 10367, supra, and thereby limited to a period of sixty days.
The second appeal must be, and it is hereby, dismissed.
MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES MATTHEWS, ANDERSON and MORRIS concur.