WESTERN HOLDING CO., APPELLANT, *v.* NORTHWEST-ERN LAND & LOAN CO., RESPONDENT.

(No. 8,123.)

(Submitted January 9, 1941. Decided May 27, 1941. Resubmitted October 10, 1941. Opinion on Rehearing filed December 30, 1941.)

[120 Pac. (2d) 557.]

*Mr. H. Leonard DeKalb,* for Appellant, submitted a brief and a supplemental brief on rehearing, and argued the cause orally.

*Mr. D. W. Doyle,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

This is an appeal from a judgment dismissing an action to foreclose a real estate mortgage, the judgment of dismissal being on the ground that the lien of the mortgage had expired under the time limitation as provided by section 8267, Revised Codes of 1921, and under the same section as amended by Chapter 104 of the Laws of 1933.

The action was commenced in the district court on April 19, 1935, by the Western Holding Company to foreclose a real estate mortgage made by William Lystra and wife on February 21, 1917, to the First National Bank of Conrad, and given to secure

the payment of a promissory note of the same date maturing on December 1, 1922, and bearing six per cent. interest payable annually. Lystra and wife, the Northwestern Land and Loan Company, and the First National Bank of Conrad and the receiver of the bank were named as defendants. The complaint sets out the note and mortgage and shows assignment thereof to the plaintiff, all duly recorded, and alleges that on August 21, 1931, an affidavit of renewal was filed as provided for by section 8267 of the Revised Codes.

The complaint further alleges that the defendant Northwestern Land and Loan Company is the record owner of the mortgaged premises by virtue of a deed of conveyance dated October 31, 1933, and is the same company which had previously held title to the said premises by virtue of a deed from the mortgagor dated November 10, 1924, conveying the premises subject to the mortgage in question, and alleges that at all times mentioned in the complaint the said defendant company had full knowledge and notice of the mortgage.

The complaint further alleges that the whole of the principal sum of the note, $1,500, and interest thereon since December 1, 1930, is unpaid and in default, and prays for judgment of foreclosure.

The defendant Northwestern Land and Loan Company alone made answer, by which it admits the execution and delivery of the note and mortgage and the recording of the mortgage, and admits that the plaintiff is the owner and holder thereof. It further admits that it is the record owner of the mortgaged premises, and that at the time it acquired title thereto, and at all times mentioned in the complaint, it had full knowledge and notice of the mortgage sought to be foreclosed. The answer denies the sufficiency of the renewal affidavit set forth in the plaintiff's complaint, and alleges failure to file any affidavit of the renewal of the mortgage within eight years and sixty days from the maturity date of the note, and pleads section 8267 of the Revised Codes of 1921, and Chapter 104 of the Laws of 1933,

each separately as a bar to the foreclosure action. Plaintiff by reply set out facts to show an extension agreement but which, under our views of the case, need not be considered.

Later, upon request of plaintiff and by leave of court, the administrator of the estate of Wilmer S. Clark was made a party defendant, and a paragraph added to the complaint alleging that title to the mortgaged premises reposes in Wilmer S. Clark, deceased, and that the defendant H. H. Hullinger is the administrator of his estate.

The cause was tried to the court sitting without a jury. The only parties appearing were the plaintiff and the defendant Northwestern Land and Loan Company. The administrator of the Wilmer S. Clark estate had made no answer, nor had the First National Bank of Conrad, nor its receiver, and the default of these defendants had been entered. The action was dismissed as to the defendants Lystra and wife on plaintiff's motion. The only controversy submitted to the court was the issue as made between the plaintiff and the defendant Northwestern Land and Loan Company.

The note and mortgage were received in evidence without objection, and it was stipulated by counsel for both parties that the principal of the note and the interest accruing thereon since the year 1930 had not been paid, and that the note and mortgage had been duly assigned to the plaintiff.

As to the ownership of the land after the mortgage was given it was further stipulated by counsel for both parties that on November 10, 1924, the land was conveyed by William Lystra and wife to the defendant Northwestern Land and Loan Company by deed, which recited that it was taken subject to the mortgage in question, and recited a consideration of one dollar only; that on March 21, 1928, the land was conveyed by the Northwestern Land and Loan Company to Wilmer S. Clark by deed reciting a consideration of one dollar and that the same was expressly made subject to the said mortgage; that it was shown by the probate court records that Wilmer S. Clark had

died on May 5, 1931; that there were two heirs named in the probate proceedings of his estate, Ella G. Clark and William. L. B. Clark; that no decree of distribution of the estate had been made; that Ella G. Clark, one of the heirs, conveyed all her interest in the mortgaged land by warranty deed to the defendant Northwestern Land and Loan Company on August 31, 1933, which by its terms was made subject to the mortgage and recited a consideration of one dollar, and that each of the said deeds of conveyance was duly recorded shortly after execution.

There was evidence to prove an extension agreement as pleaded in the plaintiff's reply, but this we need not recite because, as stated above, of other grounds we find as the basis for our conclusion.

No evidence was submitted by the defendant. The cause was submitted to the court for decision. Thereafter the court rendered its judgment dismissing the action, basing the judgment on its finding that, at the time of the commencement of the action, the mortgage described in the complaint had expired, and that the action, which was for the foreclosure of the said mortgage, was at the time of its commencement barred by expiration of the time within which such action might be commenced. This appeal is from that judgment.

As above shown, the defendant has pleaded the statute, the original section 8267, and the 1933 amendment, each as separate defenses. This statute was enacted in 1913 and incorporated into the Codes as section 8267, reading as follows:

"Every mortgage of real property made, acknowledged, and. recorded, as provided by the laws of this state, is thereupon good and valid as against the creditors of the mortgagor or owner of the land mortgaged, or subsequent purchasers or encumbrancers, from the time it is so recorded until eight years after the maturity of the entire debt or obligation secured thereby, and no longer, unless the mortgagee, his heirs, executors, administrators, representatives, successors, or assigns shall, within sixty days after the expiration of said eight years, file in the

office of the county clerk and recorder where said mortgage is recorded, an affidavit, setting forth the date of said mortgage, when and where recorded, the amount of the debt secured thereby, and the amount remaining unpaid, and that the said mortgage is not renewed for the purpose of hindering, delaying, or defrauding creditors of the mortgagor or owner of the land and upon the filing of said affidavit, the said mortgage shall be valid against all persons for a further period of eight years; provided, however, that any mortgage now of record, as to which eight or more years from the maturity thereof have elapsed, may be renewed at any time within six months from the date of the approval of this Act, by filing within said time the aforesaid affidavit with the county clerk of the county wherein such mortgage may be recorded.''

In 1933 this statute was amended by eliminating the words ''is thereupon good and valid as against the creditors of the mortgagor or owner of the land mortgaged, or subsequent purchasers or encumbrancers,'' and substituting in place thereof the words ''shall be good against all''; and by eliminating also the whole of the proviso for six months' time after approval of the Act within which to file the renewal affidavit for mortgages as to which the specified limitation period of eight years had already elapsed.

The statute in its original form gave protection to third parties dealing with the mortgaged property under the assumption that the mortgage debt was paid, or that the lien of the mortgage had been abandoned as security for the debt because of the lapse of time. It furnished no basis for the plea of the statute of limitations by parties who dealt with the property on the basis of the mortgage as an existing encumbrance, for they were in no better position in respect of the lien of the mortgage than was the mortgagor.

The history of the series of transactions of the sale of this ██ █ land shows clearly that at all times the mortgage was taken into account in dealing with the land. Every transfer

of the title was made expressly subject to the mortgage, and was for a nominal consideration of one dollar. It was a conveyance of the legal title to the land encumbered by the mortgage which in each instance was recognized as an existing encumbrance. It was a conveyance of the equity of redemption. The purchaser stepped into the shoes of the mortgagor, excepting as to personal liability for the debt, to which he did not become bound, not having assumed and agreed to pay it. The status of the debt as a lien against the land did not suffer any change because of any of these sale transactions, and the rights of the owner of the mortgage were thereby in no way impaired. The mortgage lien encumbrance was assumed without assuming personal liability for the debt. There was a recognition of the debt in each of these transactions which had the effect of tolling the statute of limitations.

"A purchaser assuming the payment of a mortgage recognizes it as a subsisting incumbrance, and cannot set up the statute of limitations against it until the limitation of twenty years or other period of limitation, from that time has elapsed. His grantee is also bound by such admission to the same extent that he was himself bound. A recital in a deed or mortgage that the premises are subject to a prior mortgage has the same effect. It constitutes an admission that removes the bar of the statute as to parties to the deed." (Jones on Mortgages, 8th Ed., sec. 1539; also Wiltsie on Mortgage Foreclosure, 5th Ed., secs. 218, 219, 229 and 230; *Hughes* v. *Edwards,* 9 Wheat. 489, 6 L. Ed. 142; *Carson* v. *Cochran,* 52 Minn. 67, 53 N. W. 1130; *Heyer* v. *Pruyn,* 7 Paige, N. Y., 465, 34 Am. Dec. 355; *Hadley* v. *Clark,* 8 Idaho 497, 69 Pac. 319.)

The language employed in each of the deeds making the conveyance subject to the mortgage has a well defined meaning, and the purpose in its use is clear. It shows that in the sale transactions both parties recognized the fact that there was a mortgage which stood as an encumbrance on the land. The grantor so stated in the deed which he executed and which was used in

making the conveyance. The grantee took the title on that basis by accepting the deed in that form. It was an acknowledgment of the mortgage by both parties which became written into the chain of title. Had there been any question of the validity of the mortgage and its non-existence as a lien, but as to which the grantor hesitated in making any representations, the conveyance could have been so written that it was understood that the grantor did not warrant the title as against the mortgage and that it was left to the grantee to find out and determine for himself whether the mortgage was a valid lien. This difference in understanding with respect to encumbrances and distinction in language employed to express the understanding is discussed and made clear in a number of court decisions. In the case of *Stough* v. *Badger Lumber Co.*, 70, Kan. 713, 79 Pac. 737, 739, there is a full discussion of this question, and a number of cases are cited. In that case there was a conveyance of the land "free and clear of all encumbrances, except all back taxes, and liens, and mortgage held by the Badger Lumber Company." The court said: "It will be observed that there was no assumption of the mortgage debt by the grantees, nor is the property taken subject to the payment of the liens. The exception is not the equivalent of a statement that the grant is made subject to the mortgage or other liens, and there is nothing approaching an affirmative recital of the existence or validity of any liens. The recital involved here is only a limitation of the covenant against incumbrances, and is not such a recognition of the mortgage or other liens as will estop the grantee from contesting their enforcement against the property conveyed."

The consideration recited in each deed, the nominal sum of one dollar, is further evidence of the fact that the mortgage was taken into account as a material part of the transaction. It would be unreasonable to assume that the owner of the land would part with title for just that nominal sum with the purchaser free to avoid the payment of the mortgage debt out of the land, leaving the grantor alone to answer for the payment thereof.

In the instant case, in each conveyance of the land the reference to the mortgage amounted to an affirmative recital of its existence as a valid lien upon the land which had the effect of tolling the statute of limitations. Thus the conveyance by the mortgagors to the Northern Land and Loan Company on November 10, 1924, extended the life of the debt and the lien of the mortgage until November 10, 1932; the conveyance by the Northwestern Land and Loan Company to Wilmer S. Clark on May 21, 1928, extended the life of the debt and the lien of the mortgage until May 21, 1936; the conveyance by Ella G. Clark to the Northwestern Land and Loan Company, on August 31, 1933, extended the life of the debt and the lien of the mortgage until August 31, 1941. So that when this respondent, the Northwestern Land and Loan Company, took title the second time and which is now in question on this appeal, the mortgage was a valid existing lien upon the land, shown to be so by the instruments of record in the chain of title. The lien would have remained effective until May 21, 1936, without any reference to the mortgage in the deed. The Northwestern Land and Loan not only were bound by the public records but were estopped to deny the lien of the mortgage at that time because of its deed of conveyance on March 21, 1928, in which the mortgage was recognized. By taking the deed on August 31, 1933, the respondent not only took the title, subject to the mortgage but, because of the affirmative recitals in the deed, it recognized the existence of the mortgage which had the effect of extending the life of the debt and the lien of the mortgage until August 31, 1941. Therefore the statute, section 8267, in its original form, cannot be relied upon by the respondent as a bar to the action, and it is unnecessary to consider the question of the sufficiency of the renewal affidavit nor the extension agreement pleaded by the plaintiff.

Whether the 1933 amendment widened the scope of the limitation as already provided in the statute in its original form, we are not called upon to decide, for granting that it does

impose a new limitation which may be taken advantage of by all parties interested in the land title, including those who have actual knowledge of the mortgage, as is here contended, this new limitation cannot be invoked as a defense in this action. The eight-year and sixty-day period from the maturity of the debt had already expired at the time the amendment was enacted, March 13, 1933. If it is given full effect as a limitation statuate, the result would be in this case that instantly upon its enactment this plaintiff was deprived of its right to foreclose its mortgage, for the statute contains no saving clause as to mortgages that would be instantly outlawed, nor does it make any provision of time within which actions might be brought after its enactment which would otherwise be instantly barred. While the legislature may establish a limitation applying to a cause of action as to which none existed before, and may change existing statutes and shorten the period of limitation, always in any such legislation provision must be made allowing a reasonable time for actions to be brought that otherwise would be instantly barred. (*Guiterman* v. *Wishon,* 21 Mont. 458, 54 Pac. 566; *In re Colbert's Estate,* 44 Mont. 259, 119 Pac. 791; *Wilson* v. *Pickering,* 28 Mont. 435, 72 Pac. 821; Cooley's Const. Lim., 8th Ed., 764, 765; *Vance* v. *Vance,* 108 U. S. 514, 2 Sup. Ct. 854, 27 L. Ed. 808; *McGahey* v. *Virginia,* 135 U. S. 662, 10 Sup. Ct. 972, 34 L. Ed. 304, 318; *Myers* v. *Wheelock,* 60 Kan. 747, 57 Pac. 956, 957.)

And, as stated in 17 R. C. L. 677 : "When the legislature makes the time so short that the right to sue is practically denied, courts will declare such time unreasonable, but they cannot go further and fix a different time; neither can they, if the legislature fails to fix any time, supply this legislative lapse."

The defendant has not pleaded any limitation bar against the debt itself, and if pleaded it would be of no avail because of the admitted facts, and inasmuch as neither section 8267 in its original form nor as amended by the Act of 1933 is any bar to the action as commenced, the plaintiff was entitled to prevail,

and the lower court was in error in entering the judgment of dismissal, and therefore the judgment should be reversed.

Inasmuch as only one of the defendants in the action appears ██ ██ here as respondent to this appeal, we are confronted with the question of the relation thereto of the other defendants who defaulted in the court below, and the extent of the relief to which the appellant shall be entitled as result of reversal of the judgment of the district court. In considering that question, we must have in mind the status of the title as it is presented to us as well as the character and extent of the relief sought by the plaintiff. The record shows that the mortgagors had parted with title to the land, and while they were made parties defendant the action was dimissed as to them; that the whole title to all of the mortgaged land was vested in Wilmer S. Clark at the time of his death subject to the mortgage; that Clark died intestate and his estate is in course of administration and has not been distributed; that the probate record names two heirs of his estate, one of whom, Ella G. Clark, has conveyed all her interest in the land, as such heir, to the defendant, Northwestern Land and Loan Company, subject to the mortgage. There is no demand for personal judgment for the debt as against anyone; the sale of the mortgaged premises in satisfaction of the debt is all that is sought. The First National Bank of Conrad and its receiver were made defendants as claiming an interest in the land subsequent and inferior to the mortgage.

The plaintiff, in taking the appeal, addressed its notice to the answering defendant Northwestern Land and Loan Company only, and the notice states that the appeal is from the judgment entered in favor of the defendant Northwestern Land and Loan Company. Apparently the appellant viewed the issue as lying between the appellant and the respondent only, and that the defaulting defendants are none of them necessary parties in the consideration of the issue by this court. In the briefs filed by counsel on both sides, the discussion of the issue is limited to the case made between these parties. There is some

discussion as to the sufficiency of the complaint to state a cause of action against the defendant administrator of the Clark Estate, but the discussion of that point does not go to the extent of showing its relation to the question raised on the appeal, nor how it would in any way be material in the consideration of the issue as between the appellant and the respondent. Neither in the briefs nor in oral argument was the question of necessary parties to the appeal considered, nor has there been any motion to dismiss the appeal for defect of parties or for insufficiency of notice.

The judgment of dismissal in the lower court is a final judgment disposing of the cause in its entirety and as to all the parties. The dismissal was beneficial to the defaulting defendants as well as the answering defendant. A reversal of that judgment as to all the parties would affect adversely the defaulting defendants as well as the answering defendant. The appellant, therefore, cannot have a reversal of the judgment in its entirety without making all the defendants parties to the appeal and serving notice upon them. A defaulting defendant must be served with notice of appeal if a reversal of the judgment may affect him adversely. (*T. C. Power & Brother* v. *Murphy,* 26 Mont. 387, 68 Pac. 411; *Spokane Ranch & Water Company* v. *Beatty,* 37 Mont. 342, 96 Pac. 727, 97 Pac. 838; *Great Falls National Bank* v. *Young,* 67 Mont. 328, 215 Pac. 651.)

The question then is whether, with the case disposed of in its entirety by the lower court, and favorably to all the defendants, we may now on appeal deal with the case only as to one of the defendants who is the respondent here.

If a judgment is severable as between co-parties to the litigation, an appeal may be taken as to any one of the co-parties. This is true only where the judgment is divisible so that the one co-party is in no joint relation with the other co-party, either in receiving the fruits of a judgment favorable to them or in meeting the obligations of an adverse judgment. And so it is not only the interest of the co-party who has not been made a

party to the appeal, that must be taken into account. The disadvantage that may result to the co-party who alone is made a party to the appeal, must be considered.

It is clear that upon this appeal we cannot disturb the judgment of the lower court as to any of the defendants not made parties to the appeal. As to them, the judgment must stand. The only question is whether we can proceed with the case as made between the appellant and respondent. The effect upon the appellant in so limiting the appeal we need not be concerned with, because it was of its own choosing. The only question is as to the effect upon the respondent. A reversal of the judgment means that the plaintiff shall have recovery from sale of the mortgaged premises. But inasmuch as the other defendants and their interests in the mortgaged premises have been wholly absolved from any liability for the satisfaction of the debt, by the judgment of dismissal, the separate interest of the respondent in the mortgaged premises alone may be looked to for the satisfaction thereof. This will place the respondent at a disadvantage for which he would have cause of complaint. The only question then is whether the respondent, by failure to raise this objection by motion to dismiss the appeal or otherwise, has waived the objection, and which raises the further question whether the objection may be waived and we may proceed as having jurisdiction.

Notice of appeal is jurisdictional. This court acquires no jurisdiction of an appeal if notice is not given. The notice must be served upon the adverse party which means all parties to the action who may be adversely affected by a reversal or modification of the judgment from which the appeal is taken. (Sec. 9733, Rev. Codes; *Mitchell* v. *Banking Corp.*, 81 Mont. 459, 264 Pac. 127). However, ''the failure to serve notice of appeal on one of the parties is not jurisdictional to the extent of depriving the court of the power to consider and determine such questions in the case as may be decided without affecting his rights.'' (3 Am. Jur. 162, sec. 460.)

38

The case presented by this appeal then must be limited to the right of the appellant to satisfy the mortgage debt by sale of the separate interest of the respondent in the mortgaged premises. The appellant has abandoned its case as against all of the other defendants. The respondent has accepted the issue on appeal as made by the appellant and has made no objection to being singled out by the appellant to stand the brunt of a reversal alone. The case before us stands as if the action had been originally brought against the respondent alone. No question but that such an action may have been maintained in the absence of timely objection by the lone defendant that parties other than itself owning interests in the mortgaged premises should be joined so that the payment of the whole debt be not exacted out of its interest alone.

The parties here, the appellant and respondent, by their own doings have narrowed the issue, and, as this may be disposed of without affecting adversely any of the other parties to the litigation, there is no ground for this court saying, on its own motion, that it is without jurisdiction to consider the issue on the case so made.

The judgment of the lower court is reversed as to the defendant Northwestern Land and Loan Company, and the cause is remanded with direction to enter judgment for the plaintiff against the defendant Northwestern Land and Loan Company for the foreclosue of the mortgage and the sale under such judgment of all the right, title and interest of the said defendant in the mortgaged premises.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ANGSTMAN and ERICKSON concur.

MR. JUSTICE MORRIS:

I dissent from that part of the majority opinion wherein it is held that the defaulting defendants were adversely affected by not having notice of appeal. In my judgment the majority

opinion would in effect nullify the default judgments and would do so without statutory authority.

A default judgment is just as effective and binding as any other in circumstances where it is allowed as provided by section 9322, Revised Codes, and after its entry the party who defaulted may be relieved from the effects of the default in the discretion of the trial court only as provided by section 9187.

The cases cited by the majority to sustain their holding from which I dissent are not applicable here by reason of the differing fact conditions involved.

In the case of *T. C. Power & Bro.* v. *Murphy,* cited by the majority, Power & Bro. commenced the action to foreclose a real estate mortgage. Murphy, Chipman, Patterson and wife were made defendants; in the event the sale of the land did not produce enough to pay plaintiffs' mortgage in full, a deficiency judgment was asked as against Patterson only; Patterson defaulted. Murphy and Chipman answered making general denial and then set up an affirmative defense to the effect that they were the owners of a lien on Patterson's interest in the land prior and superior to plaintiffs' mortgage lien. This pleading of Murphy and Chipman was not served on Patterson. The trial court held Murphy and Chipman's lien was prior and superior to plaintiffs' in part, splitting the lien on the lands between Murphy and Chipman and T. C. Power & Bro., (26 Mont. 387, 68 Pac. 411, 412.) The lien allowed Murphy and Chipman was obviously grounded upon their affirmative defense. The notice of appeal by Murphy and Chipman was not served on Patterson. This court held: ''By failing to answer the complaint, Patterson admitted the material allegations therein contained to be true, and this is all he admitted. His default was tantamount to consent that a judgment in accord with the averments of the complaint might be entered against him. That pleading did not tender any issue to him with respect to Murphy and Chipman's lien or title. * * * The purpose of the appeals in the present case is to reverse the judgment, or to procure its

modification, so that the title and lien asserted by the appellants, and which have been declared subordinate to the demand of the plaintiff, may attach as a charge superior to the plaintiff's demand. The effect of such reversal or modification would be to release * * * certain of Patterson's property from the prior lien thereon of the respondent as declared by the judgment, thereby diminishing the fund to arise from the decretal sale, and tending to increase the amount of any deficiency judgment that might be rendered against Patterson. * * * The priority of the respondent's lien, as established by the judgment, is a matter in which Patterson has an interest recognized by the law, and he is interested in maintaining the integrity of the judgment declaring the respondent's mortgage to. be a superior lien upon part of the property.'' The appeals were dismissed for want of notice to Patterson.

When Murphy and Chipman interposed their affirmative defense, setting up a claim of lien on the Patterson land, they made Patterson an adverse party in the complaint of T. C. Power & Bro. In other words, Patterson was an adverse party as to his two defendant associates, as well as to Power & Bro. And Power & Bro. and Murphy and Chipman were adversaries as to each other in their attempts to establish priority of their respective lien against the Patterson land. The affirmative defense removed Murphy and Chipman from their status as co-defendants with Patterson under the T. C. Power & Bro. complaint. Their affirmative defense as to Patterson was in effect a complaint against him as fully as the complaint in the action of T. C. Power & Bro. against the three defendants, and the pleadings in their entirety develop a contest between Power & Bro. on the one hand and Murphy and Chipman on the other as to which should have the first lien on the Patterson land.

Murphy's and Chipman's affirmative defense, in answer to the complaint of Power & Bro. against Patterson was in effect a complaint against Patterson and the latter was entitled to have notice of every material matter alleged in the pleadings that

affected his interest or placed a greater burden upon him than was originally demanded in the complaint.

In the case at bar, the answering defendant entered a general denial and then set up a defense by pleading the statute of limitation. No deficiency judgment was asked against anyone. The plea of the statute of limitations did not constitute the defaulting defendants "adverse parties," as described in section 9733, but, as was said in the *Power & Bro. Case* "by failing to answer the complaint" they "admitted the material allegations therein contained to be true." Their default "was tantamount to consent that a judgment in accord with the averments of the complaint might be entered against him." No relief was sought as provided by section 9187, and all rights of the defaulting defendants were foreclosed when the defaults were entered.

The rule laid down in the *Power case* relative to adverse parties simply means that a defaulting party is bound only as to the issues tendered by the complaint, and that if a material issue is raised by any subsequent pleading that adversely effects the defaulting party's rights he is entitled to notice of all proceedings wherein the new issue or issues are involved. No new issues arose in the case at bar by any pleading subsequent to the complaint and the rule does not apply here.

## OPINION ON REHEARING

MR. JUSTICE ERICKSON delivered the opinion of the court.

Upon rehearing appellant urges that this court erred in that portion of its decision dealing with the status of the defaulting defendant. It is its position that the judgment from which the appeal is taken was only one in favor of the answering defendant, and that, so far as the defaulting defendant is concerned, the judgment of the lower court did not purport to concern itself. In the decision heretofore rendered, we took the position that the judgment below inured to the benefit of the defaulting defendant as well as to the respondent, and held that, since the appellant appealed only from that portion of the judgment in

favor of the answering defendant, the judgment in favor of the defaulting defendant must stand.

Upon a re-examination of the judgment and the record, and aided by the able argument and brief of counsel, we have come to the conclusion that appellant's position on rehearing must be sustained. While it is true that the language of the judgment is broad and inclusive when it recites that the action be dis- missed, and, further, that the language of the judgment does not expressly recite that it be dismissed only as to the answering defendant, yet an examination of the judgment itself and of the record convinces us that it was not the intention of the trial court, nor of the parties, that the judgment should operate as one in favor of the defaulting party, as well as in favor of the respondent.

In the first place, it is to be noted that in the judgment itself, while specific mention is made of the appearance of respondent by its counsel, no mention is made in the judgment of the defaulting defendant, nor are the jurisdictional facts as to it set out. While it is true that there is in the record some evidence which might tend to indicate an intention on the part of the appellant to submit the cause to the lower court, so far as the defaulting defendant was concerned, the evidence so adduced is not conclusive on that point. Practically all the evidence was adduced by the way of stipulation between the appearing defendant and the appellant, and the evidence presented as to the non-appearing defendant may be said to be in aid of the evidence produced against the respondent and by way of explanation of the status of the mortgage in question.

A further indication of the intention on the part of the appellant and the understanding of the court as to the effect of the judgment appears in the bill of exceptions wherein it is recited: "On the 27th day of March, 1940, the court made an entered judgment in favor of defendant Northwestern Land and Loan Company and against plaintiff." And no mention appears in the recital of the proceedings had that the judg-

ment was in favor of the defaulting defendant; and with the bill in this condition the lower court made its certificate reciting that the bill of exceptions "contains a full, complete, true and *accurate* statement of all * * * proceedings had," etc.

A further consideration impels us to the conclusion we have reached, and that is the general rule that we will not presume that the court attempted to enter a judgment which it had no right to make. In this case the judgment of the trial court was based entirely upon the affirmative plea of the statute of limitations interposed by the answering defendant. That plea could not inure to the benefit of the defendant in default. The only basis upon which judgment could be entered for the defaulting defendant would be that the statute of limitations had run, and advantage of that could not be taken by the defaulting defendant without an affirmative plea. Since no affirmative plea appears, the court could not render judgment in the defaulting defendant's favor. And we will not construe the judgment to reach that result, but will rather presume that the court had no intention of entering a judgment that it had no right to make.

Therefore, the decision heretofore rendered is amended in accordance with what is here said.

ASSOCIATE JUSTICES ANGSTMAN and MORRIS concur.

MR. JUSTICE ANDERSON dissenting.

I am unable to subscribe to the views of the majority in modifying the decision as first rendered.

The record shows the submission to the lower court of the case in its entirety as would be sufficient for judgment against all the defendants on plaintiff's theory of the case. Counsel for appellant, in oral argument on rehearing, stated that the case was so submitted to the lower court for complete adjudication and as against all the defendants. There is nothing in the judgment limiting it as in favor of the answering defendant.

only. There is nothing in the record to show any other disposition of the case as to the non-answering defendant. In the foreclosure of a lien, although default of the defendant has been entered, not until judgment is rendered by the court after proof made is the case disposed of. (*Soliri* v. *Fasso*, 56 Mont. 400, 185 Pac. 322.)

As to the propriety of the trial court rendering judgment in favor of the non-answering defendant: It was incumbent upon the plaintiff to make out a case even though no defense had been interposed. If either the complaint, or the proof offered and admissible under the complaint, was insufficient, it was the duty of the court to dismiss the action as much as if the defendant were there and urging a dismissal.

To state a cause of action against one proceeded against as owner of the land, the complaint must show that his title or interest is encumbered by the lien of the mortgage. Where he was not the mortgagor, it must be shown that when he acquired his title he either expressly recognized the existence of the mortgage or had notice of its existence. If the recording of the mortgage is relied on as giving notice, it must appear that the mortgage was of record at the time the title was acquired and that it was during the period of time that the recording served to give constructive notice.

The defendant whose interests are here considered is the administrator of the estate of Wilmer S. Clark, deceased. All there is in the case to connect the Clark estate with the foreclosure action is the allegation in the complaint that "title to the lands described in the mortgage * * * reposes in the name of Wilmer S. Clark and that Wilmer S. Clark is deceased" and that Hullinger is administrator of the estate. There is nothing to show when or how Wilmer S. Clark became possessed of the title, and no allegation which in any way connects Clark, or the Clark estate, with the mortgage. In a default case, where the complaint is insufficient, the deficiency cannot be supplied by evidence submitted beyond the allegations of the complaint.

With no date shown as to when the Clark title was acquired, the complaint does not show that it was acquired with constructive notice of the mortgage because of its recording. The date of the foreclosure complaint, April 19, 1935, which says that the title then reposed in Wilmer S. Clark, then deceased, is the only date shown in connection with the Clark title. On that date there was not constructive notice from the recording of the mortgage, the eight-year limitation period under section 8267, Revised Codes, having expired on April 1, 1930, more than five years before. A renewal affidavit is shown to have been filed, but not until August 18, 1931, which was not within the sixty-day period prescribed by the statute, and was therefore ineffectual.

Section 8267 is not a statute of limitations that needs to be pleaded to be operative. It does not limit the time for commencement of action. It limits the time during which the recording of the mortgage serves as constructive notice of its existence. It is substantive law that must be considered in every case where the recording alone is relied on as giving notice.

Here, then, on the facts pleaded as against the non-answering defendant, it is not alleged that the mortgage is effective as a lien on the title sought to be reached—the title and interest of the Clark estate. The court, by its judgment, says that the lien of the mortgage had expired, which was true as to the Clark estate, so far as the complaint discloses. The judgment of dismissal was therefore the only correct and proper judgment which the court could render in disposing of the case as against that defendant.

That a defendant in default is not entitled to participate further in the proceedings in the case is true as to the further steps that may be taken in completing the litigation to judgment upon the controversy in which he is involved. Whatever that judgment is, so long as it is confined within the limits of the cause of action as stated in the complaint, the defaulting defendant has to be content. But also he has the right to rest

46

on that judgment as final. And if it is sought by appeal to a higher court to have the judgment reversed or modified to his detriment, he has the right to be heard in opposition and must be given notice of the appeal.

The rule is fundamental. In the multitude of cases where the question has arisen the rule itself has not been questioned, and the difficulty always has been in determining whether the defaulting defendant will be adversely affected by a reversal or modification of the judgment so as to bring him within the rule. (*T. C. Power & Bro.* v. *Murphy,* 26 Mont. 387, 68 Pac. 411; *Great Falls National Bank* v. *Young,* 67 Mont. 328, 215 Pac. 651; 4 C. J. S., Appeal and Error, sec. 398, p. 861; *Wade* v. *Hope, etc.,* 65 Okl. 69, 162 Pac. 742; *Allen* v. *Garner,* 45 Utah 39, 143 Pac. 228; *Langton, etc., Co.* v. *Peery,* 48 Utah 112, 117, 159 Pac. 49; *Rabinowitz* v. *Houk,* 100 Fla. 44, 129 So. 501; *Armour Fertilizer Works* v. *N. G. Wade Investment Co.,* 90 Fla. 403, 105 So. 819; *Megin* v. *Filor,* 4 Fla. 203; *Re Castle Dome Mining & Smelting Co.,* 79 Cal. 246, 21 Pac. 746; *De Arnaz* v. *Jaynes,* 4 Cal. Unrep. Cas. 226, 34 Pac. 223; *Bowering* v. *Adams,* 126 Cal. 653, 59 Pac. 134; Annotation 88 A. L. R. 428 to 436.

MR. CHIEF JUSTICE JOHNSON:

I concur in the above dissenting opinion of MR. JUSTICE ANDERSON.